CITY OF MAHTOMEDI v. DOMINIC SPYCHALLA.

243 N. W. 2d 31.

May 21, 1976—No. 45489.

*Lais, Bannigan & Ciresi* and *Donald L. Lais,* for appellant.

*Eckberg, Lammers, Briggs & Wolff* and *Robert G. Briggs,* for respondent.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

PER CURIAM.

Appellant appeals from a judgment of the district court (1) enjoining him from operating a junkyard on certain described premises; and (2) ordering him to remove junk material from such premises within 60 days of the date of the judgment. We affirm.

The facts are undisputed and may be summarized as follows: The town of Lincoln brought a proceeding against appellant on September 18, 1968, charging that his operation of a junkyard was in violation of an ordinance. During trial, the parties reached an agreement under which the town agreed to dismiss the action and appellant agreed, among other things, to "termi-

nate the operation of such junk yard on or before December 11, 1973." The town of Lincoln was annexed by the city of Mahtomedi on January 12, 1972. On September 12, 1972, Mahtomedi adopted an ordinance which permitted the continuation of existing uses. On January 17, 1974, the city served appellant with a notice to cease operation of his junkyard within 30 days. Appellant did not comply and this action followed.

Three issues are raised on appeal:

(1) Was the agreement superseded by the city's subsequent ordinance?

(2) Was there an adequate remedy at law?

(3) Did the trial court err in requiring appellant to remove junk material when he had not specifically agreed to do so?

■ Appellant apparently conceded below and in his brief here that (1) the agreement between appellant and the town of Lincoln was validly entered into;[1] (2) that agreement clearly provides for termination of his junkyard in December 1973; and (3) the city of Mahtomedi is the successor to the rights of the town of Lincoln under the agreement.[2] The dispute is whether

---

[1] We have found no case in Minnesota or elsewhere which expressly upholds the power of a municipality to make such an agreement. The right of a municipality to condition an *exception* for a nonconforming use on an agreement to eventually terminate or not expand the use has been upheld in another jurisdiction. Edmonds v. Los Angeles County, 40 Cal. 2d 642, 255 P.2d 772 (1953). See, also, Bringle v. Board of Supervisors of County of Orange, 54 Cal. 2d 86, 4 Cal. Rptr. 493, 351 P. 2d 765 (1960); Nathanson v. D. C. Board of Zoning Adjustment, 289 A. 2d 881 (D. C. App. 1972).

It would seem that such power is inherent in a municipality's authority to broadly regulate zoning and land-use planning in the public interest, see Minn. St. c. 462, especially Minn. St. 462.351, and to carry on, settle, and compromise litigation conducted within the scope of its powers. See, Oakman v. City of Eveleth, 163 Minn. 100, 203 N. W. 514 (1925).

[2] An annexing city acquires all "money, claims, or properties" possessed by a town, and these things become the property of the annexing

that agreement was superseded by the adoption of Mahtomedi Ordinance No. 209 on September 12, 1972, since that adoption occurred before the December 11, 1973, termination date set forth in the agreement. The critical section of the ordinance, § 402.01, provides:

"Any structure or use *lawfully existing* upon the effective date of this Ordinance may be continued at the size and in a manner of operation existing upon such date, except that no structural alteration shall be made." (Italics supplied.)

Appellant argues that his junkyard was a lawfully existing use on the effective date of the ordinance (December 20, 1972) by virtue of the agreement. The city maintains that (1) the "lawful existence" of the junkyard was conditioned by the requirement that it terminate by December 11, 1973; and (2) § 401.02 of the ordinance provides that if conditions imposed in "regulation[s] of any kind" [e. g., by agreement] are stricter than the ordinance, those conditions are to be given effect.

We agree with the city's arguments. First, the junkyard did not lawfully exist by reason of the new ordinance, but rather by virtue of the agreement. In the ordinance-violation proceeding, appellant had the right to attempt to establish lawful existence continuing beyond the date set in the agreement, but elected instead to continue his operation under the terms of the agreement. Since the legal status of appellant's junkyard was finally and completely dealt with by that agreement, it is not within the scope of the ordinance. Second, the agreement was a regulation under § 401.02 in that it involved the town as a party and specifically governed the use of appellant's property. Moreover, in this case the city moved promptly against appellant when he failed to terminate his junkyard by giving him notice to do so approximately one month after his breach. In this situation,

---

municipality "with full power and authority to use and dispose of the same for public purposes as the council or new annexing municipality may deem best." Minn. St. 414.067, subd. 2.

there is no evidence that the city intended to abrogate the agreement by passage of the new ordinance. While the city could have, as appellant argues, specifically mentioned appellant's use in the ordinance, it could likewise have reasonably concluded that such a reference was unnecessary because of the agreement.

■ Appellant argues that the city did not show that it had no adequate remedy at law. Appellant suggests that the city did have an adequate remedy at law—a further ordinance. The words "at law" do not refer to legislation, but to an action at law for damages. Damages are certainly not an efficient and practical remedy available to a municipality seeking to require a property owner to comply with zoning regulations and agreements. See, 9A Dunnell, Dig. (3 ed.) § 4472, note 48. Cf. County of Freeborn v. Claussen, 295 Minn. 96, 203 N. W. 2d 323 (1972); 17 McQuillin, Municipal Corporations (3 ed.) §§ 49.57 to 49.59.

■ Appellant's final argument is that the district court went too far in requiring him to remove junk materials as well as terminate operation of the junkyard. Appellant is correct in that the agreement does not contain any provision specifically allowing this part of the injunction. As a practical matter, however, storage of junk materials is an integral part of the operation of a junkyard within the contemplation of the agreement. Any other construction would be unreasonable and would thwart the spirit of the agreement.

Affirmed.