[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the appeal of Larry Nogueira (Nogueira) from a decision of the Zoning Board of Review of the Town of Tiverton (Decision and Board respectively). The Decision upheld the issuance of a Violation Notice, citing Nogueira for illegally expanding his non-conforming use. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
The property at issue in this litigation, described as Assessor's Plat 185, Lot 2, is located on the east side of Three Rod Highway, Tiverton, Rhode Island. Nogueira purchased the property on January 15, 2003. At that time, the lot housed a fifth wheel trailer which Nogueira also purchased through a separate bill of sale. The property is situated in an R-80 zone. Under the controlling Tiverton Zoning Ordinance, mobile homes, travel trailers, and manufactured homes are prohibited uses in a residential, R-80 area.[1] (Town of Tiverton Code of Ordinances, Appendix A Zoning, Art. IV § 2.) The record is silent as to when the property first held the fifth wheel trailer, but evidence presented indicated that the use dates back to 1987 — prior to the 1994 enactment of the Tiverton Zoning Ordinance. (Tr. at 37.) Thus, there was no dispute that when Nogueira purchased the property, the trailer constituted a legal non-conforming use.
On April 22, 2003, Nogueira replaced the fifth wheel trailer with a new park trailer.[2] Subsequently, on November 26, 2003, Robert M. Walker Jr. (Walker), the Tiverton Building Official, issued a Violation Notice, alleging that Nogueira had abandoned his prior legal non-conforming use by replacing the trailer. The Violation Notice further cited Nogueira for expanding his legal non-conforming use without obtaining the proper permits and approvals. Nogueira appealed the Violation Notice to the Board.
On March 3, 2004, the Board conducted an advertised public hearing concerning Nogueira's appeal. At the hearing, Nogueira testified that the fifth wheel trailer measured 400 square feet and had been hooked to pre-existing water, electric, and sewer connections. (Tr. at 35, 55.) Nogueira claimed that the trailers were the same volume.[3] According to Nogueira, when he swapped the trailers, the only changes to the property consisted of increasing the pre-existing deck by approximately 40 square feet in order to repair the stairs and the addition of a ground air-conditioning unit as opposed to the previous unit which attached to the top of the fifth wheel trailer. (Tr. at 48, 50.)
Although Walker admitted that he had not inspected the property prior to the removal of the fifth wheel trailer, he testified that the new park trailer was larger in size than the previous fifth wheel trailer. (Tr. at 23, 25, 26.) Walker also testified that utility attachments had been added to the property. (Tr. at 26.) Walker presented the Board with photographs of the new trailer, the deck, and the air-conditioning unit. Moreover, Richard Saunders, an abutting land owner residing at 65 Point View Drive, testified that two weeks prior to the extraction and replacement of the fifth wheel trailer, Nogueira expanded the concrete slab on which the trailer rested by digging a hole and adding concrete. (Tr. at 90.)
Based on the testimony and evidence before it, the Board issued a Decision on March 2, 2004 upholding the violation issuance. The Board found that Nogueira had replaced the fifth wheel trailer with a park trailer that was larger in size. Additionally, the Board discerned that the deck had been expanded, a ground located HVAC system installed, and the water and sewer connections modified. The Board concluded that the foregoing constituted an expansion of the non-conforming use requiring a use variance which had neither been sought nor granted.[4]
Nogueira filed a timely appeal with proper notice. On appeal, Nogueira argues that the Board's decision is not supported by substantial evidence. Furthermore, Nogueira contends that the Board did not set forth sufficient factual findings in support of the written decision.
 STANDARD OF REVIEW
This Court has authority to review the decision of the Board pursuant to G.L. 1956 § 452-4-69. Section 45-24-69(d) provides in pertinent part:
 "(d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court's review of a zoning board's decision is limited to an examination of "`the entire record to determine whether "substantial" evidence exists to support the board's findings.'" Mill Realty Assocs.v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting De Stefano v. ZoningBd. of Review, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). Substantial evidence is relevant evidence that a reasonable person would accept as adequate support for a conclusion which amounts to "`more than a scintilla but less than a preponderance.'" Id. (quoting Apostolou v.Genovesi, 120 R.I. 501, 508, 388 A.2d 824-25 (1978)). Therefore, if competent, supportive evidence exists, then the zoning board's decision must be affirmed. Id.
 ZONING BOARD DECISION
In its decision, the Board found that Nogueira had expanded the nonconforming use of his property. As a preliminary matter, it is necessary to address the nature of the nonconforming use. In his brief to this Court, Nogueira attempts to classify his nonconforming use as a seasonal use; however, at the hearing before the Board, Nogueira through his counsel presented that the nonconforming use of the property was the placement of a trailer thereon. (Tr. at 15, 51.) It is clear that the Tiverton Zoning Ordinance prohibits the placement of a trailer on the subject property which is zoned as R80 residential. As such, Nogueira's use of the original fifth wheel trailer on the property was the nonconforming use which is defined as "a building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment."[5] G.L. 1956 § 45-24-31(49); Town of Tiverton Code of Ordinances, Appendix A Zoning Art. II § 73. Thus, the nonconforming use at issue is the use of the lot for the placement of a trailer as opposed to the seasonal use of the property.
"Generally, `the right to continue a nonconforming use does not . . . include the right to expand or intensify that use.'" Town of Richmond v.Wawaloam Reservation, Inc., 850 A.2d 924, 934 (R.I. 2004) (quoting Townof West Greenwich v. A. Cardi Realty Assocs., 786 A.2d 354, 362 (R.I. 2001)). The Tiverton Zoning Ordinance expressly prohibits the expansion of a nonconforming use without first obtaining a use variance. Article XIV § 5 of the Tiverton Zoning Ordinance provides in pertinent part:
 "a. A legal nonconforming use of any parcel of land shall not be extended beyond that portion of the lot thus used, or otherwise expanded, unless a use variance is granted pursuant to the provisions and standards set forth in article XVII.
 . . .
 c. A legal nonconforming structure as to use shall not be added to or enlarged unless a use variance is granted pursuant to the provisions and standards set forth in article XVII.
 . . .
 e. A nonconforming building or structure shall not be moved in whole or in part unless such building or structure is made to conform to all of the regulations of the zoning district in which it is to be located."
Nonconforming uses tend to be "`detrimental to a zoning scheme, and the overriding public policy of zoning . . . aimed at their reasonable restriction and eventual elimination.'" RICO Corp. v. Town of Exeter, 787 A.2d 1136,1145 (R.I. 2001) (citation omitted). Accordingly, nonconforming uses are "strictly construe[d]." Town ofRichmond, 850 A.2d at 934. The policy of eventually eliminating the nonconformance also justifies the prohibition against expanding the nonconforming use. 4 Arden H. Rathkopf, The Law of Zoning and Planning § 73:14 (2005).
Nogueira contends that there was insufficient evidence to support the Board's finding that the nonconforming use had been expanded. In support of his contention, Nogueira relies on Harmel Corporation v. Tiverton ZoningBd. of Review, 603 A.2d 303 (R.I. 1992). However, HarmelCorp. is inapposite to the issue in this case as the court was dealing with whether a change in a nonconforming use, as opposed to an expansion of use, had occurred. Whether a nonconforming use has been expanded or enlarged is dependent upon the facts of each case. Santoro v. Zoning Bd. of Review of the Town ofWarren, 93 R.I. 68, 72, 171 A.2d 75, 77 (1961). Generally, a physical expansion into land not previously utilized for the nonconformity constitutes an expansion of a nonconforming use. 4 Arden H. Rathkopf, The Law ofZoning and Planning § 73:16 (2005). Furthermore, many courts have found that the replacement of a nonconforming mobile home or trailer with a more modern larger mobile home constitutes an illegal expansion of the nonconforming use. See City of Marion v. Rapp,655 N.W.2d 88, 91 (S.D. 2002) (holding that replacement of a 14 x 70 foot trailer with a 16 x 76 foot trailer is an enlargement of the use); Mossman v. City ofColumbus, 449 N.W.2d 214, 219 (Neb. 1989) (replacing an old, shabby trailer with a newer, larger mobile home is an expansion); Bixler v. Pierson, 188 So. 2d 681, 682
(Fla.Dist.Ct.App. 1966) (replacing an old trailer with a new trailer is an expansion). The rationale is that the replacement of the pre-existing, nonconforming mobile home with a more modern mobile home perpetuates the life of the nonconforming use in degradation of the policy behind eventually eliminating the nonconforming use.See Rapp, 655 N.W. 2d at 91; Mossman, 449 N.W.2d at 219;Bixler. 188 So. 2d at 682-683.
In the present case, it was undisputed that Nogueira replaced the pre-existing fifth wheel trailer with a new park trailer. Nogueira claimed that the trailers were equal in dimension — 400 square feet. However, his testimony was contradicted by the record evidence of the Certificate of Origin, which indicated that the park trailer measured 12 x 35 feet resulting in a volume of 420 square feet — an enlargement of 20 square feet. In fact, Mr. Saunders testified that Nogueira had extended the concrete slab on which the fifth wheel trailer rested two weeks prior to bringing in the park trailer. Furthermore, the Board was presented with testimony that Nogueira had added a ground air-conditioning unit and expanded the deck surrounding the trailer. Based on the evidence before it, the Board concluded that Nogueira had replaced the fifth wheel trailer with a larger trailer and utilized more land area than previously used. Accordingly, the Board had before it competent evidence to support the finding that Nogueira had expanded his nonconforming use.
Nogueira further argues that the Board's decision did not set forth sufficient factual findings. "`[A] municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the actions taken.'" Kaveny v. Townof Cumberland Zoning Bd. of Review, 875 A.2d 1, 8 (R.I. 2005) (quoting Sciacca v. Caruso, 769 A.2d 578, 585
(R.I. 2001) (citation omitted)). "Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany." Id. (quoting Bernuthv. Zoning Bd. of Review of New Shoreham, 770 A.2d 396, 401
(R.I. 2001)). In the Decision, the Board found that "Nogueira removed the travel trailer and installed a park trailer in April of 2003 larger in size, expanded a deck, modified water and sewer connections and installed a ground located HVAC system without obtaining any required local or state permits." (Decision at 1.) Reliable, probative, and substantial evidence was presented to support these factual findings. Moreover, these factual findings support the Board's legal conclusion that Nogueira had expanded his nonconforming use. Accordingly, these findings were factual and the application of the legal principles was more than a recital of litany. See Bernuth, 770 A.2d at 401.
 CONCLUSION
After a review of the entire record, this Court finds that the Decision of the Board upholding the Violation Notice is not clearly erroneous and is supported by substantial evidence. Furthermore, the Board's Decision sets forth sufficient factual findings in support of the legal conclusion. The Decision was not made upon unlawful procedure. Substantial rights of the appellant have not been prejudiced. Therefore, the Decision of the Board is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] Travel trailers or mobile homes are not permitted uses in any zoned area under the Tiverton Zoning Ordinance. Article IV § 15 of the Town of Tiverton Code of Ordinances, Appendix A Zoning states that "uses not generally provided for in the zoning district use table shall not be permitted anywhere in the Town of Tiverton." Mobile homes and travel trailers are not provided for in the zoning district use table.
[2] The Tiverton Zoning Ordinance does not define either fifth wheel or park trailer. Mobile home is defined as
 "Any vehicle or similar structure designed and constructed so as to permit the occupancy thereof as a dwelling by one or more persons, and so designed and constructed that it was or may be mounted on wheels and used as a conveyance on a street or highway, propelled or drawn by its own or other motive power. Mobile home shall include previously portable vehicles or structures which have been placed on a permanent foundation, but shall not include a prefabricated home or structure."
(Town of Tiverton Code of Ordinances, Appendix A Zoning Art. II § 70.)
[3] Mr. Nogueira's testimony was the only evidence presented to the Board concerning the size of the original fifth wheel trailer. The Certificate of Origin for the new park trailer was presented to the Board which denotes the dimensions of the new park trailer as 12 feet wide and 35 feet long. By performing simple mathematics, the volume of the new park trailer amounts to 420 square feet.
[4] Although the Violation Notice cited Nogueira for an abandonment of the non-conforming use, during the deliberations, the Board noted that Nogueira had not abandoned the use because sufficient time had not elapsed. (Tr. at 101.) Under the Tiverton Zoning Ordinance, discontinued use for a period of one year or more is required for abandonment. (Town of Tiverton Code of Ordinances, Appendix A Zoning Art. XIV § 3.)
[5] A nonconformance may exist as to use or dimension. Section45-24-31(49)(i)-(ii). In this case, there has been no suggestion that the trailer was a nonconformance by dimension.